**B1040 (FORM 1040) (12/15)**

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>CHRISTOPHER P. AND THERESA-KEANE RUIZ, and<br>as Trustees of the Ruiz Family Trust, dated March 5, 2009 | DEFENDANT<br>MICHAEL EDWARD FAVREAU |
|---|---|

| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>James I. Stang (CA Bar No. 94435)<br>John W. Lucas (CA Bar No. 271038)<br>PACHULSKI STANG ZIEHL & JONES LLP<br>10100 Santa Monica Blvd., 13th Floor<br>Los Angeles, CA 90067<br>Tel: 310.277.6910 / Fax: 310.201.0760<br>Email: jstang@pszjlaw.com / jlucas@pszjlaw.com | ATTORNEYS (If Known)<br>Garrick A. Hollander<br>WINTHROP COUCHOT<br>660 Newport Center Drive Ste 400<br>Newport Beach, CA 92660<br>Tel: 949-720-4100 / Fax : 949-720-4111<br>Email: ghollander@winthropcouchot.com |
|---|---|

| PARTY (Check One Box Only)<br>☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor ☒ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☒ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☐ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
The complaint seeks to except the plaintiffs' claims against the debtor from discharge pursuant to section 523(a)(4) of the Bankruptcy Code based upon fraud.

| NATURE OF SUIT |
|---|
| (Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.) |

**FRBP 70 01( 1) – Recovery of Money/Property**
☐ 11-Recovery of money/propert y - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 70 01 (2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001( 3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/ Revocation of Discharge**
☐ 41-Objection/re vocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 6 6 -Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation,
   actual fraud
☒ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 70 01(6) – Dischargeability (continued)**
☐ 61 -Dischargeability- §523(a)(5) , domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation
   (other than domestic support)
☐ 6 5 -Dischargeability - other

**FRBP 70 01(7) – Injunctive Relief**
☐ 71 -Injunctive relief- imposition of stay
☐ 72-Injunctive relief - other

**FRBP 70 01(8) Subordination of Claim or Interest**
☐ 81 -Subordination of claim or interest

**FRBP 70 01(9) Declaratory Judgment**
☐ 91 -Declaratory judgment

**FRBP 70 01(10) Deter mi nation of Remove d Act ion**
☐ 01 -Determination of removed claim or cause

**Other**
☐ SS-SIPA Case - 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court
   if unrelated to bankruptcy case)

| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | ☐ Demand |

Other Relief Sought



B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Michael Edward Favreau | BANKRUPTCY CASE NO.<br>8:16-bk-12856-SC | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central District of California | DIVISION OFFICE<br>Santa Ana | NAME OF JUDGE<br>Honorable Scott C. Clarkson |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br>October 17, 2016 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>John W. Lucas | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.


American LegalNet, Inc.
www.FormsWorkFlow.com

James I. Stang (CA Bar No. 94435)
John W. Lucas (CA Bar No. 271038)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, Ca  90067
Tel/Fax: 310.277.6910 / 310.201.0760
Email: jstang@pszjlaw.com
        jlucas@pszjlaw.com

Attorneys for Christopher P. and Theresa Keane-Ruiz

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re: | Case No.: 8:16-bk-12856-SC |
| MICHAEL EDWARD FAVREAU, aka FAVREAU'S CONSTRUCTION MANAGEMENT, | Jointly administered with |
| | Case No: 8:16-bk-12879-SC |
| Debtor, | Chapter 11 |
| FAVREAU'S CUSTOM WOODWORKING, INC., a California corporation, | |
| Debtor. | |
| CHRISTOPHER P. AND THERESA-KEANE RUIZ, and as Trustees of the Ruiz Family Trust, dated March 5, 2009, | Bankr. Adv. Proc. No.: _____ |
| Plaintiffs, | **COMPLAINT TO THE NONDISCHARGEABILITY OF CERTAIN DEBTS OWED BY DEBTOR MICHAEL EDWARD FAVREAU TO CHRISTOPHER P. AND THERESA RUIZ PURSUANT TO 11 U.S.C. § 523** |
| v. | |
| MICHAEL EDWARD FAVREAU, | |
| Defendant. | |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_SF:92227.2 76132/001

Plaintiff s, Christopher P. and Theresa Keane-Ruiz, and as Trustees of the Ruiz Family Trust, dated March 5, 2009 (the "**Plaintiffs**"), creditors in the above captioned chapter 11 cases allege as follows on personal knowledge as to their own actions, on information and belief as set forth herein, and on that certain statement of decision and judgment entered by that state court against Michael Edward Favreau *a/k/a* Favreau's Construction Management (the "**Defendant**"):

### Nature of the Action

1.      Plaintiffs purchased a home at 1829 Port Margate, Newport Beach, CA for use as a family residence in 2003. In 2008, Plaintiffs decided to do an extensive rebuilding of the entire structure and hired an architect to prepare the plans. Plaintiffs began to consider options for builders for their "dream home." Plaintiffs were approached by Defendant, who asked for the opportunity to submit a bid to build their home. Defendant had coached Plaintiffs son in youth football and had a close working relationship with Plaintiff Theresa Keane-Ruiz because she was the team administrator for the youth football team.

2.      Anxious to get the job to build their home, Defendant represented to Plaintiffs, orally and in writing, that he was an experienced contractor and builder of high end custom homes. Defendant provided them with marketing materials showcasing homes he had purportedly built and reflecting his contractor's license number. Defendant proudly displayed his own home as a representation of the quality of his building and drove Plaintiff Penny to view other high end homes, which he falsely represented that he had built. Defendant represented that he would use only the highest quality materials and represented that because of his experience he would hire the best subcontractors to perform the work of the highest quality at reasonable rates.

3.      In reliance on these oral and written representations, Plaintiffs were induced to enter into a written contract and hire Defendant to rebuild their home for an agreed-upon budget and with a promise that he would have the home completed by "the holidays," which Plaintiffs expressed to Defendant meant not just Thanksgiving and Christmas but that he wanted to be in his newly rebuilt home by Halloween.

4.      Defendant was required to have a contractor's license. Neither he nor his company, Favreau's Construction Management, held valid licenses during the work performed for Plaintiffs.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

He continued to misrepresent that status by falsely claiming at one point that his license had expired and that he was in the process of curing the minor problem to get it renewed. Because of the oral representations Defendant made to Plaintiffs that he was an experienced builder, which he confirmed with his unsubstantiated or fake marketing materials, Plaintiffs had no reason to suspect Defendant never had a license, and had no reason to doubt that this was a temporary lapse in his license which Defendant was in the process of curing.

5.      Defendant continued to act in the capacity of a general contractor on the project, as though he was licensed by hiring and supervising subcontractors, scheduling the work of subcontractors and material suppliers and giving them direction, obtaining their invoices and presenting them to Plaintiffs for payment, and making payments to the subcontractors and material suppliers on behalf of Plaintiffs. In addition, Defendant hired unlicensed contractors to perform services for which a license was required. The subcontractors Defendant selected and supervised performed work of inferior quality, resulting in a number of defects in construction, including but not limited to structural work, painting work, electrical work, plumbing work, tile work, flooring, and roofing. The work failed to conform to the plans in several aspects. The quality of the work done by Defendant and by the subcontractors did not conform to industry standards. Defendant had also induced Plaintiffs to hire his company, Favreau's Custom Woodworking, Inc., to install custom cabinetry of the highest quality in their home, based on the examples of his work he had shown them in his own home. The cabinetry he installed did not conform to those representations as neither the materials used nor the workmanship reflected the quality represented to Plaintiffs as an inducement for their agreement to hire Favreau's Custom Woodworking, Inc., Defendant also concealed known defects and failed to disclose that Defendant received kick-backs and stole from Plaintiffs.

6.      By this Complaint, Plaintiffs seek a determination that Plaintiffs' claims against Defendant is nondischargeable on the grounds that Plaintiff's claim is based on fraud under 11 U.S.C. § 523(a)(4).

-3-

**Jurisdiction and Venue**

7.     On July 7, 2016 (the "**Petition Date**"), the Defendant, along with Favreau Custom Woodworking, Inc., wholly owned by the Defendant, commenced voluntary chapter 11 cases under title 11 U.S. C §§ 101, et seq. (the "**Bankruptcy Code**").

8.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157.

9.     Venue in this district is proper pursuant to 28 U.S.C. § 1409.

**The Parties**

10.     Plaintiffs Christopher P. and Theresa Kean-Ruiz are residents at 1829 Port Margate Place, Newport Beach, CA (the "**Property**") in Orange County (together, the "**Plaintiffs**", individually, "**Chris**" and "**Penny**").

11.     Defendant, Michael Edwards Favreau, is an individual that resides at 3401 Quiet Cove, Corona Del Mar, CA in Orange County. Michael Edwards Favreau is a debtor in the above-captioned chapter 11 cases. Defendant is the sole owner of Favreau Construction Management ("**FCM**") and also Favreau Custom Woodworking, Inc. ("**FCW**"). FCW is a debtor and its chapter 11 case is being jointly administered with Michael Edwards Favreau's chapter 11 case.

**General Allegations**

**A.     The Construction Project**

12.     Plaintiffs hereby incorporate the allegations set forth in paragraphs 1 through 11 inclusive as though fully set forth herein.

13.     For approximately seven years, the Defendant had a personal relationship with the Plaintiffs. Penny was the team administrator for the football teams that were coached the Defendant and Chris also coached in the same league as the Defendant. Defendant coached the Plaintiffs' son during the seven year period. As a consequence, the Plaintiffs had a relationship with the Defendant that was based on trust.

14.     During the course of that relationship Defendant represented to Plaintiffs that Defendant was a builder whose business was the construction of high end single family detached

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_SF:92227.2 76132/001

residences. During the year 2007, Defendant learned that Plaintiffs were going to tear down their existing home and construct a new high end single family residence. Thereafter, Defendant began to solicit the project. As a builder Defendant advised Plaintiffs that he would guide them through the process and would also like the opportunity to submit a bid on the project.

15.    In doing so, Defendant advised plaintiffs he had the requisite experience and expertise as a builder and had constructed high end homes, including his own residence. In addition, Defendant advised Plaintiffs that his specialty trade was cabinetry and finished carpentry. Defendant represented that his attention to detail and finish work was of the highest quality and guaranteed that the same quality would exist throughout the property if Defendant was given the opportunity to build plaintiffs' home. Defendant proclaimed that his work met and exceeded the highest building standards. Defendant represented that his clients had nothing but the highest praise for his work and services.

16.    Defendant advised Plaintiffs that he retained only subcontractors that were very experienced, licensed and would get the job done within a ten month window.

17.    Defendant represented that his subcontractors had excellent reputations, backgrounds and would deliver the quality of work that was expected for new construction in the Port Street neighborhood. The subcontractors selected and hired by defendants would perform the work at the best prices. Because of Defendant's relationships, he would get his subcontractors to further reduce their prices. Defendant represented that he would reach agreements without compromising the quality of work or the products installed. The Defendant and the other debtor understood and were advised that it was the expectation of Plaintiffs that the quality of work and products installed must meet the highest standards which are comparable to new construction in the Port Street neighborhoods. The Defendant and other debtor represented that because of their reputation and business relationships they could build the house on time and below budget. Defendant and the other debtor understood that it was a material condition that the house be substantially completed before the 2012 holiday season. Defendant and the other debtor represented that their team of subcontractors would meet that time line.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

-5-

18. Prior to the end of 2010, Plaintiffs were required to pull a building permit for the plans they had submitted for approval. Defendant offered to walk Penny through the process and instruct her how to pull the building permit. Defendant told Penny to pull the permit as an owner builder. Defendant knew that Penny had no knowledge or understanding why Defendant wanted the permit pulled as an owner builder. Defendant knew that Chris was an attorney that practiced construction litigation and that he would require Defendant to enter into a prime contract as the builder, which would also require Defendant to enter into agreements with subcontractors.

19. Prior to signing the agreement, Defendant asked that his identity as the contractor be changed to "consultant." The reason given for the change was that Defendant's "insurance" required the language. No other substantive changes were made and Defendant's duties, obligations and responsibilities remained the same whether he was identified as a consultant or contractor.

20. After entering into the prime contract with Defendant, Plaintiffs signed a one year lease agreement in July of 2011 to rent a local property so that their children could remain in the neighborhood and attend their schools. Upon the expiration of the one year lease, the terms of the rental reverted to a month to month tendency. This allowed the plaintiffs to vacate the rental property and move into their new home by October 20 12, which was the beginning of the Holiday Season.

21. Plaintiffs obtained an extension for the permit because their loan application was still pending. The extension was to expire in December 2011. In approximately November of 2011, the lending bank requested the license number of the contractor that was building the home. When Penny asked Defendant for his license she was advised by Defendant that he was in the process of renewing the license and that it would not come until January or February of 2012. Without the license, the loan could not be secured. Defendant offered to obtain the license of K2 General Contractors, Inc. ("**K2**") and would have that entity sign the contract with the understanding that Defendant would have his license as promised by January or February 2012. The contract signed by K2 was identical to the contract signed by Defendant and FCM, which identified both as "consultants."

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

-6-

22.     Defendant never intended to operate or work under the license of K2. Defendant obtained K2's signature on a contract with the intent and understanding that it was necessary to secure the loan, the funds of which would then be used to pay Defendant pursuant to the contract that Defendant entered into with Plaintiffs.

23.     To induce plaintiffs to hire Defendant and FCM as their contractor and builder and or to otherwise work on the project, Defendant intentionally misrepresented and failed to disclose the true status of Defendant's license. Thereafter, Defendant lied about the license requirements and the obligations to Plaintiffs in an effort to conceal the fraud and violations of the California Business and Professions Code. Defendant did so with the expectation and intent that the Plaintiffs would rely on his conduct and omissions. Plaintiffs reasonably relied upon the representations and omissions of Defendant to Plaintiffs' detriment and in fact made substantial monetary payments to Defendant and to other parties at Defendant's direction based on that reliance.

24.     Defendant and FCM never had a valid contractor license to perform the work promised and contracted for regarding the property and engaged in acts and omissions to build Plaintiffs' house knowing that Defendant's conduct was in violation of the California Business and Professions Code.

25.     In addition to the conduct intended to induce the Plaintiffs to act, Defendant engaged in conduct that constitutes common, actual and constructive fraud as defined by California Civil Code §§ 1572 and 1573.

26.     Specifically, Defendant's acts and omissions include but are not limited to:

a.    Failed to disclose and concealed the true status of Defendant's license.

b.    Failed to disclose and concealed that certain subcontractors were not licensed.

c.    Falsely represented that licenses are not necessary for the construction work performed on the property.

d.    Failed to disclose and concealed that Defendant was not in compliance with the California Business and Professions Code.

e.    Failed to disclose and concealed that work was performed outside the scope of specific licenses.

-7-

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

f.   Failed to disclose and concealed that work was not performed in strict compliance with the plans, agreed to building standards and contract documents.

g.   Falsely represented that the work was in accordance with the plans, agreed to building standards and building code in order to have Plaintiffs accept and pay for non conforming and substandard work.

h.   Falsely represented that Defendant did not enter into a contract.

i.   Falsely represented that the installation of the water heaters was in compliance with the plans, was not dangerous and did not violate the agreed to building standards.

j.   Falsely represented that certain work was an extra and then requested payment for same when said work was a part of the original scope of work, was necessary to repair defects or to obtain compliance with the contract or was otherwise free.

k.   Falsely represented that a license to repair electrical problems was not necessary.

l.   Falsely represented that the terms of the contract do not apply unless each page is initialed.

m.   Falsely represented that Plaintiffs had to change the language of the subcontract agreements to read that Defendant was retained as consultants to help build Plaintiffs' home and that the failure to change the language would result in Plaintiffs not having authority to make decisions regarding the construction of the property.

n.   Failed to disclose and concealed improper and fraudulent billing in addition to submitting invoices that were improper.

o.   Failed to disclose Defendant received benefits for awarding work to subcontractors.

p.   Failed to disclose the true status of the work in progress.

q.   Falsely representing Defendant obtained all appropriate insurance on everything and that Plaintiffs and Defendant were named as additional insureds on all required policies of insurance.

27.   In an effort to obtain acceptance by Plaintiffs of non conforming conditions, Defendant made false representations and engaged in conduct designed to intimidate and threaten Plaintiffs. Said actions included but were not limited to advising Plaintiffs if they did not accept and

-8-

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

pay for the non-conforming work, Defendant would rip out and destroy the work that had been installed. Defendant repeatedly and verbally abused and attacked Plaintiffs by calling them "fucking liars" and telling Plaintiffs to fuck off in response to Plaintiffs refusal to pay for non compliant work. Defendants made repeated threats that in the event payment for non-conforming work was not made, Defendant would further advise Plaintiffs' lender that the construction contract was not valid and would advise plaintiffs' homeowners association regarding work Defendant performed on the property.

28.     Defendant refused to produce the complete construction files including all bids, proposals, photos, contracts, job logs, and invoices which evidenced the monetary purchases and payments with the intent to further defraud plaintiffs and prevent them from discovering the true nature and extent of the fraud, breach of contract, and defective construction. Defendant took possession of certain files from subcontractors to further conceal the fraud and deceit. Defendant refused to respond in writing and remained silent regarding requests for information and continued to ignore direct instructions not to take certain actions including the construction and installation of product that had not received the written approval of Plaintiffs.

29.     Defendant falsely claimed that he was having problems receiving e-mails and did not believe it was professional to respond to text messages. The refusal to provide written responses and silence was intended to further delay the discovery of the true nature and extent of defendant's fraud and breach of contract claims.

30.     As owners of the Property, Plaintiffs made payments to Defendant for certain construction services based upon the representations, actions, and omissions of the Defendant as set forth herein. The value of these services exceeded 500 dollars. As such, Defendant was required to be licensed pursuant to California Business and Professions Code§ 2018.

31.     Defendants did not at any time hold the licenses required to perform the type of work they performed and/or contracted for regarding the property. Defendants also aided and abetted others to perform work at the Property who were not licensed to perform the work at the Property. Defendant's failure to obtain and/or aiding and abetting others that were not licensed is a violation of

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

-9-

California Business and Profession Code *§* 7031(b) and requires Defendant to disgorge all sums paid and those that said Defendant aided and abetted for materials and services rendered.

32.     The sums paid to Defendant and unlicensed contractors  and required to be disgorged is $394,015.47, as adjudicated by the State Court.

### B.     **The State Court Action**

33.     Plaintiffs hereby incorporate the allegations set forth in paragraph 1 through 32 inclusive as though fully set forth herein.

34.     On April 3, 2013, the Plaintiffs filed a complaint against the Defendant, FCM, and FCW in the Superior Court of the State of California for the County of Orange (the "**State Court**") styled as *Christopher P. Ruiz and Theresa Keane Ruiz, individually and as Trustees of the Ruiz Family Trust dated March 5, 2009 v. Michael Edward Favreau aka Mike Favreau, Favreau's Construction Management, et al.*, Case No. 30-2013-00642123-CU-BC-CXC (the "**State Court Action**").

35.     Upon on the facts set forth herein, Plaintiffs sought damages and disgorgement against the Defendant and the other parties named in the State Court Action based upon fraud and inducement, actual fraud and deceit, and fourteen other causes of action in an unspecified amount.

36.     After the State Court Action had been pending for over two and half years, the State Court held a nineteen (19) day trial where the State Court actively questioned witnesses, ruled on objections, and considered oral and documentary evidence.

37.     In April 2016, the State Court issued its decision ("**Statement of Decision**")[1] by which the State Court ruled in favor of Plaintiffs and found that Defendant fraudulently induced Plaintiffs to enter into a contract with Defendant to construct Plaintiffs' home.

38.     In the Statement of Decision, the State Court awarded damages against the Defendant in the amount of $700,000 on account of the harm caused to Plaintiffs' home as a result of Defendant's fraudulent actions and omissions.

---

[1] A true and correct copy of the Statement of Decision is annexed hereto as **Exhibit A**. The Statement of Decision is incorporated herein by reference in its entirety.

-10-

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

39.     In the Statement of Decision, the State Court ordered Defendant to disgorge $394,015.47, which was on account of payments made to Defendant and the company that he induced Plaintiffs to hire.

40.     The Court also found that Defendant's malicious conduct warranted the imposition of punitive damages in the amount of $700,000.

41.     On May 11, 2016, the State Court entered a judgment ("**Judgment**")[2] in the amount of $1,794,015.47 based on the State Court's reasoning set forth in detail in the Statement of Decision.

## C.    **Post-Trial Motions**

42.     Plaintiffs hereby incorporate the allegations set forth in paragraphs 1 through 41 inclusive as though fully set forth herein.

43.     On May 25, 2016, Plaintiffs filed a Motion for Costs (the "**Motion for Costs**"), which the Plaintiffs seek to recover approximately $1,945,394.66 for fees, costs, and other charges arising from the prosecution of the claims based on fraud in the State Court Action.

44.     The State Court has not yet considered or ruled upon the Motion for Costs. Defendant and FCW commenced their bankruptcy cases prior to the State Court's hearing on such matters.

### **Claim for Relief**

### **(Nondischargeability of Debt - 11 U.S.C. § 523(a)(4))**

45.     Plaintiffs hereby incorporate the allegations set forth in paragraphs 1 through 44 inclusive as though fully set forth herein.

46.     Plaintiffs reasonably relied upon the representations and omissions of Defendant to their detriment and in fact made monetary payments to Defendant and to other parties at Defendant's direction.

47.     As a direct, proximate, and foreseeable result of Defendant's conduct and omissions, the Property was constructed having the substantial and defective conditions alleged herein and Plaintiffs will incur substantial costs to repair the defects and deficiencies.

---

[2] A true and correct copy of the Judgment is annexed hereto as **Exhibit B**. The Judgment is incorporated herein by reference in its entirety.

48.     As a direct, proximate, and foreseeable result of the Defendant's conduct and omissions, the value of the Property and the products installed therein have diminished.

49.     As a direct, proximate, and foreseeable result of Defendant's conduct and omissions, Plaintiffs have and will be compelled to incur reasonable costs to repair the defects and substandard conditions.

50.     As a direct, proximate, and foreseeable result of the Defendant's conduct and omissions, Plaintiffs will incur expert fees and expenses to investigate the defects and deficiencies in the Property.

51.     As a direct, proximate, and foreseeable result of Defendant's breaches, acts and omissions, Plaintiffs have incurred damages associated with the delay regarding the completion of the Property.

52.     As a further direct, proximate, and foreseeable result of the Defendant's breaches, acts and omissions, plaintiffs have lost the use and enjoyment of the property and have moved into the property prior to acceptable completion. Plaintiffs will be living in the Property during completion efforts and repairs thereby further resulting in the loss use and enjoyment of the Property.

53.     As a result of Defendant's acts, Plaintiffs suffered damages in the amount no less than $3,739,410.13, which is inclusive of the fees, costs, and other charges in the pending Motion for Costs with the State Court.[3]

54.     As a result of Defendant's acts and omissions as alleged herein, Plaintiffs are entitled to damages as set forth in Code of Civil Procedure § 1029.8 including but not limited to triple damages, attorney fees and costs.

55.     In performing the intentional acts and omission alleged herein, defendants acted with willful fraud, oppression and malice and/or with a conscious disregard of the rights of the Plaintiffs thereby entitling Plaintiffs to an award of punitive damages against Defendant.

---

[3] Prior to the filing of this Complaint, Plaintiffs filed a motion for relief from the automatic stay so that the pending matter before the State Court may be concluded by the State Court. By the filing of this Complaint, Plaintiffs do not consent that the underlying liability should be liquidated in this Court but should be liquidated in the State Court.

-12-

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

56.    Defendant's debt to Plaintiffs is nondischargeable under 11 U.S.C. § 523(a)(4), as a debt for fraud.

## **Prayer for Relief**

WHEREFORE, Plaintiffs request judgment on the Complaint as follows:

1.    On the First Claim for Relief, Plaintiffs request a determination that Defendant is indebted to Plaintiffs in an amount not less than $3,739,410.13 and that Defendant's debt to Plaintiffs in respect of the Property and Defendant's services is excepted from discharge pursuant to 11 U.S.C. § 523(a)(4);

2.    For costs of this action incurred herein; and

3.    For such other and further relief as the Court may deem appropriate.

Dated:    October 17, 2016              PACHULSKI STANG ZIEHL & JONES LLP


                                        By:    */s/ John W. Lucas*
                                               James I. Stang
                                               John W. Lucas

                                               Counsel for
                                               Christopher P. and Theresa Keane-Ruiz

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_SF:92227.2 76132/001

1

**EXHIBIT A**

2

**(STATEMENT OF DECISION)**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**SUPERIOR COURT OF CALIFORNIA,
COUNTY OF ORANGE
CIVIL COMPLEX CENTER**

**MINUTE ORDER**

DATE: 04/27/2016        **TIME:** 09:33:00 AM     DEPT: CX101

JUDICIAL OFFICER PRESIDING: Gail A. Andler
CLERK: Mary White
REPORTER/ERM:
BAILIFF/COURT ATTENDANT:

CASE NO: **30-2013-00642123-CU-BC-CXC** CASE INIT.DATE: 04/03/2013
CASE TITLE: **Ruiz vs. Favreau**
CASE CATEGORY: Civil - Unlimited      CASE TYPE: Breach of Contract/Warranty

EVENT ID/DOCUMENT ID: 72364275
**EVENT TYPE**: Chambers Work

**APPEARANCES**

There are no appearances by any party.

Please see attached Statement of Decision.

**FILED**
SUPERIOR COURT OF CALIFOR...
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

APR 27 2016

ALAN CARLSON, Clerk of the Court

*m. white*

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ORANGE - CENTRAL JUSTICE CENTER

| | |
|---|---|
| Christopher P. Ruiz, et al. | 30-2013-00642123 |
| Plaintiff, | Statement of Decision |
| v. | Hon. Gail Andler |
| Michael Edward Favreau et al | Dept. CX101 |
| Defendants | |
| And related cross-action | |

The Court, having announced its tentative decision via Minute Order on March 23, 2016, and having received and considered the related requests, proposals, and objections thereto, hereby issues its Statement of Decision.

Plaintiffs purchased a home at 1829 Port Margate, Newport Beach for use as a family residence in 2003. In 2008 they decided to do an extensive remodel of the entire structure and hired Michael Tekstra as the architect to prepare the plans. Plaintiffs began to consider options for builders for their "dream home." They were approached by Defendant Mike Favreau, who asked for the opportunity to submit a bid to build their home. Mike Favreau had coached their son in youth football and had a close working relationship Plaintiff Theresa Ruiz ("Penny") because she was the team administrator for the youth football team. Anxious to get the job to remodel their home, Mike Favreau represented to Plaintiffs, orally and in writing that he was an experienced builder of high end custom homes. He provided them with marketing materials showcasing homes he had purportedly built and reflecting his contractor's license number. He proudly displayed this own home as a representation of the quality of his building and drove Plaintiffs to view other high end homes which he falsely represented that he had built. He represented that he would use only the highest quality materials and represented

that because of his experience he would hire the best subcontractors for them who would perform work of the highest quality at reasonable rates.  In reliance on these oral and written representations, Plaintiffs were induced to enter into a written contract and hire Mike Favreau to remodel (and essentially rebuild) their home for an agreed-upon budget and with a promise that he would have the home completed by "the holidays", which Plaintiff Chris Ruiz explained meant not just Thanksgiving and Christmas but that he wanted to be in his newly remodeled home by Halloween. Mike Favreau was required to have a contractor's license. Neither he nor his company, Favreau's Construction Management, held valid licenses during the work performed for Plaintiffs, although he continued to misrepresent that status by falsely claiming at one point that his license had expired and that he was in the process of curing the minor problem in order to get it renewed. (The Court will not separately reference Favreau's Construction Management in the balance of this Statement of Decision as it was the dba for Mike Favreau and not a separate corporate entity. This is done in light of the unity of Mike Favreau and Favreau's Construction Management, and also in order to avoid confusion between that entity and FCW, discussed below). Because of the oral representations Mike Favreau had previously made to them that he was an experienced builder, which he confirmed with his bogus marketing materials, Plaintiffs had no reason to suspect he never had a license, and had no reason to doubt that this was a temporary lapse in his license which Mike Favreau was in the process of curing.  Mike Favreau continued to act in the capacity of a general contractor on the project, as though he was licensed: hiring and supervising subcontractors; scheduling the work of subcontractors and material suppliers and giving them direction; obtaining their invoices and presenting them to Plaintiffs for payment; and making payments to the subcontractors and material suppliers on behalf of Plaintiffs.  In fact, Mike Favreau hired unlicensed contractors, including Tim Sponseller, to perform services for which a license was required. The subcontractors he selected and supervised performed work of inferior quality, resulting in a number of defects in construction, including but not limited to structural work, flat

work, electrical work, tile work, flooring, and roofing. The work failed to conform to the plans in several aspects. The quality of the work done by Favreau and by the subcontractors did not conform to industry standards. Mike Favreau had also induced Plaintiffs to hire his company, Favreau's Custom Woodworking, Inc. ("FCW"), to install custom cabinetry of the highest quality in their home, based on the examples of his work he had shown them in his own home. The cabinetry he installed did not conform to those representations as neither the materials used nor the workmanship reflected the quality represented to Plaintiffs as an inducement for their agreement to hire FCW.

Plaintiffs are entitled to disgorgement from Mike Favreau and FCW as the Court finds that both parties were required to be licensed contractors and neither party was properly licensed by the Contractor's State License Board but nonetheless requested and received payments from the Plaintiffs. Mike Favreau never had a contractor's license during the construction of the Plaintiffs' home, and FCW had its license suspended for failure to maintain worker's compensation insurance. The Court finds that Plaintiffs paid Mike Favreau $286,515.47 and paid FCW $107,500. Therefore, the Court finds these amounts must be disgorged and paid to Plaintiffs.

The Court also finds Mike Favreau fraudulently induced Plaintiffs to enter into the contract with him for the construction of their home. He falsely represented that he was a licensed contractor specializing in constructing "high end" custom homes on time and within budget with beautiful, custom finishes produced not only by his own hand but those of the premier, licensed subcontractors he would bring to the job site. These representations were oral and written, including his "CV" and other marketing materials, drive-by tours of the homes he built, and numerous and continuous oral representations. He made these representations in order to induce Plaintiffs to allow him to remodel their home, and continued to make them in order to persuade the Plaintiffs to permit him to continue working on their home. As discussed above, he lied about his licensure status. In reliance on these representations, Plaintiffs hired Mike Favreau to their detriment, as the representations proved false and injurious to

Plaintiffs. Mike Favreau was not licensed. Plaintiffs would never have hired Mike Favreau if they knew he was unlicensed, nor would they have allowed him to remain on the job responsible for hiring and supervising subcontractors and ensuring that their home was properly constructed if they had known the true facts were that he had never been properly licensed. Mike Favreau hired subcontractors who were not licensed. The construction work was of inferior quality and did not conform to the building plans or industry standards. Plaintiffs have also proven that Mike Favreau committed fraud and deceit by intentionally misrepresenting the quality of the materials used, submitting fraudulent billings, taking kickbacks, and lying about his licensure status. Mike Favreau told the plumber, Mr. Ryan, to use PEX rather than copper and falsely told him that Plaintiffs had approved the change when in fact he did not have the approval of the Plaintiffs for the change and he did not disclose it to them.  The testimony of Mr. Ryan was credible in this regard.

The evidence submitted at trial, including the documentary evidence, expert testimony, and the site visit conducted by the Court, demonstrated the extent of the harm caused to the Plaintiffs by the construction which did not conform to industry standards or the representations made by the Favreau defendants. The defects were so significant that Plaintiffs' expert essentially opined that the home would have to be completely rebuilt, asserting a higher damage figure. The alternative request for damages requested by Plaintiffs is the diminution in the value of the home, which was supported by the credible evidence. The Court therefore awards damages for the diminution in the value of the home in the amount of $700,000. The Court finds that Plaintiffs have proven that their contracts with Mike Favreau were breached, and that Mike Favreau also breached the express warranties in his contract.  The quality of the work performed by Mike Favreau and FCW were below the promised standard, and Mike Favreau further failed to hire skilled, licensed contractors, and supervise the work of the subcontractors.

The Court does not find Plaintiffs have met their burden of proof as to the causes of action for conspiracy, indemnity, strict liability, negligence per se, or Business and Professions Code section 17200.

As to Mike Favreau, the Court awards Plaintiffs compensatory damages in the total amount of $700,000. This is in addition to the disgorgement amounts awarded above: disgorgement by Mike Favreau, of $286,515.47; disgorgement by FCW of $107,500.

The Court also finds by clear and convincing evidence that Mike Favreau's malicious conduct warrants the imposition of punitive damages. His despicable conduct included taking kickbacks from subcontractors and his utter contempt for the rights of the Plaintiffs and the workers on the job as he lied, cheated and stole from them and falsified his job log to cover his tracks. The Court finds, based on the evidence submitted at trial, that Mike Favreau has a net worth of 4 million dollars and therefore, based on the evidence, additionally awards punitive damages against him in the amount of $700,000.

As to Defendant Tom Ryan:

The Court finds Plaintiffs have proven that Defendant Tom Ryan was negligent in his installation of the water heater and the other plumbing which he installed. The Court awards damages against Mr. Ryan and in favor of Plaintiffs in the amount of $34,708.00

As to Defendant Fernando Hernandez:

The Court finds Plaintiffs have not met their burden of proof and therefore find for Defendant Fernando Hernandez.

As to Defendant Ron Groves:

The Court finds Plaintiffs have proven that Defendant Ron Groves was negligent in his installation of tile and therefore awards $45,052.00 as damages against Mr. Groves and in favor of Plaintiffs.

As to the Cross-Complaint of Fernando Hernandez, the Court incorporates the findings above. Fernando Hernandez performed labor at the job site as the employee of

Mike Favreau. He was not a licensed subcontractor. He did work specifically at the request of Mike Favreau as directed by Mike Favreau. Fernando Hernandez was sued by the property owners, Plaintiffs in this action, for allegedly defective work done by Fernando Hernandez. Although the Court finds Plaintiffs did not meet their burden of proof as to their claims against Fernando Hernandez, since those claims arose solely out of the course and scope of his employment by the Mike Favreau, Fernando Hernandez has established that he is entitled to be indemnified by Mike Favreau. The Court finds that through the tort of Mike Favreau, Fernando Hernandez has been required to defend the lawsuit brought by Plaintiffs and that Fernando Hernandez was without fault. Fernando Hernandez was further required to bring a Cross-Complaint for indemnity and contribution since Mike Favreau refused to defend and indemnify him against the complaint of the Plaintiffs. As a result, Fernando Hernandez had to incur attorneys' fees and costs in order to protect his interests and therefore the Court declares in favor of Fernando Hernandez on his Cross-Complaint for indemnity and declaratory relief.

It is so ordered.

Dated: 4/27/2016

GAIL ANDLER
Judge of the Superior Court

# **EXHIBIT B**

## **(JUDGMENT)**

FILED
SUPERIOR COURT OF CALIFOR...
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

MAY 1 1 2016

... AN CARLSON, Clerk of the Court

1

2

3

4

5

6

7               SUPERIOR COURT OF THE STATE OF CALIFORNIA

8               COUNTY OF ORANGE - COMPLEX JUSTICE CENTER

9

10    Christopher P. Ruiz et al.,           30-2013-00642123

11           Plaintiff,                Judgment

12              v.                   Hon. Gail Andler

13    Michael Edward Favreau et al.,      Dept. CX101

14          Defendant.

15

16

17       Plaintiffs shall have judgment against Defendant Michael Edward Favreau, aka Mike

18 Favreau, and Favreau's Construction Management, jointly and severally, in the amount of

19 $986,515.47 in compensatory damages, which sum includes $286,515.47 as disgorgement.

20 Plaintiffs shall have judgment against Favreau's Custom Woodworking in the amount of

21 $107,500 as disgorgement.  Additionally, Plaintiffs shall have judgment against Defendant

22 Michael Edward Favreau, aka Mike Favreau, in the amount of $700,000 as punitive

23 damage.

24       Plaintiffs shall have judgment against Defendant Tom Ryan in the amount of

25 $34,708.00.

26       Plaintiffs shall have judgment against Defendant Ron Groves in the amount of

27 $45,052.00.

28

1       Plaintiffs shall recover nothing from Defendant Fernando Hernandez.

2       Cross-Complainant Fernando Hernandez shall recover from Defendants, jointly and

3  severally, attorney's fees in an amount to be proven post-trial.

4       Interest shall accrue on all sums at the legal rate from March 23, 2016 until paid.

5

6  Dated:___MAY 1 1 2016___

7                     Gail A. Andler

8                     Judge of the Superior Court

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28